**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| THE TRIPLE-I CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 06-2195-KHV |
| HUDSON ASSOCIATES ) | |
| CONSULTING, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ──────────────────────────────── ) | |
| ) | |
| KM MENTOR, L.L.C., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Consolidated With: |
| v. ) | |
| ) | No. 06-2381-KHV |
| KNOWLEDGE MANAGEMENT ) | |
| PROFESSIONAL SOCIETY, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ──────────────────────────────── ) | |
| ) | |
| HUDSON ASSOCIATES ) | |
| CONSULTING INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Consolidated With: |
| v. ) | |
| ) | No. 06-2381-KHV |
| ERIC WEIDNER, et al., ) | |
| ) | |
| Defendants. ) | |
| ──────────────────────────────── ) | |

**MEMORANDUM AND ORDER**

The Triple-I Corporation ("Triple-I") brings suit against defendants including Hudson Associates Consulting, Inc. ("Hudson"). In part, Triple-I alleges that Hudson fraudulently registered a servicemark in violation of the Revised Kansas Trademark Act, K.S.A. § 81-201 et seq. (Count I)

and seeks to cancel that servicemark in Kansas and Virginia under the Lanham Act, 15 U.S.C. § 1051 et seq. (Count VI). This matter comes before the Court on the Motion For Partial Summary Judgment On Behalf Of Hudson Regarding Alleged Fraudulent Kansas Servicemark Registration ("Hudson's Motion") (Doc. #169) filed July 9, 2007. For reasons stated below, the Court sustains the motion.

## **Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).

## **Factual Background**

The following material facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to Triple-I, the nonmoving party.

This case involves the field of knowledge management, which describes technologies used to create, disseminate and utilize knowledge data. Triple-I is engaged in the business of professional management consulting, knowledge management, project management and computer application development, integration and implementation. Triple-I does not conduct knowledge management training. It negotiates with third parties – including International Knowledge Management Institute ("IKMI") and KM Mentor, LLC ("KM Mentor") – to conduct such training. Hudson is also engaged in consulting and training services which involve knowledge management. The Knowledge Management Professional Society, Inc. ("KMPro") also engages in knowledge management training and is licensed to use Hudson servicemarks. Hudson and KMPro compete with Triple-I in the field of knowledge management.

Cubic Applications, Inc. ("CAI") is a defense contractor which supplies the United States Army with training systems and technical support. In 2003, CAI contracted with the Army to

provide non-personal services in support of the Combined Arms Center at Fort Leavenworth, Kansas. On September 30, 2003, CAI entered into a subcontract with Triple-I to provide knowledge management support for the Battle Command Knowledge System ("BCKS") at Fort Leavenworth, including "assessment, development, implementation, integration, enhancement, and maintenance of BCKS knowledge management strategy, process, and architecture services and solutions. . . ." Exhibit G-3, attached to Triple-I's Memorandum In Opposition To Hudson's Motion For Partial Summary Judgment ("Triple-I's Response") (Doc. #182) filed August 13, 2007 at 6, 12.

On February 9, 2006, Hudson applied to the Kansas Secretary of State to register the servicemark "Certified Knowledge Manager (CKM)." In its application, Hudson represented that the CKM mark is "used on marketing & advertising materials, on training course materials for the Certified Knowledge Manager (CKM) certification workshop, and on course completion certificates to designate the source of the services and identification of the business providing these services." Exhibit 2, attached to Hudson's Motion (Doc. #169) at 1. On February 13, 2006, the Secretary certified the registration of the CKM mark to be used in conjunction with education and entertainment for the purpose of identifying "education[], training and certification in the field of knowledge management." Exhibit 1, attached to Hudson's Motion (Doc. #169) at 1. Hudson also registered the CKM mark in Virginia.[1]

On March 22, 2006, CAI program manager John Schmader sent an email to Dave Buckley at Triple-I. The email expressed concern regarding statements on the web site of KMPro (a licensee of Hudson). The web site statements suggested that IKMI and KM Mentor – who were associated

---

[1] Except for registration number 7613, the record is devoid of details regarding the registration in Virginia.

with Triple-I – were engaged in ongoing trademark infringement.  On March 27, 2006, CAI vice president Stanley Cherrie sent a letter to Triple-I president Ronald Dysvick, stating as follows:

> The purpose of this letter is to notify you that any training or presentations that have been scheduled or are being scheduled for KM Mentor LLC or [IKMI] or people who have been, or are associated with either, shall not be done under any circumstances with the Government in Support of [CAI's] contract . . . or in the execution of the [CAI-Triple-I subcontract].  Our intent is not to in any way involve the Government with these organizations or people associated with them at any location (Government, Business or Public).
>
> This direction is a result of concerns that have been raised concerning the credibility of the subject companies including possible trade mark infringement.
>
> CAI is taking this action in the event the information which is posted on a public website . . . is found to have merit.  We must ensure the Government and CAI do not become associated with said companies unless the allegations made are determined to be unfounded.

Exhibit G-3, attached to Triple-I's Response (Doc. #182) at 2.  On March 30, 2006, Dysvick responded to Cherrie as follows:

> This is in response to your letter of March 27, 2006, in which you attempt to prevent [Triple-I] from engaging [IKMI] for knowledge management training.  Apparently, you are relying upon statements contained on the web site of IKMI's competitor, KMPro Corporation/Hudson . . ., with whom [CAI] is closely associated, which statements you even admit are not substantiated. . . .
>
> You purport to question the credibility of IKMI, and you allege infringement by IKMI of unidentified trademarks. . . .
>
> Triple-I's purpose and motivation is to provide BCKA personnel with the best knowledge management training available.  IKMI's leadership and training are world class and of the highest quality.  We are moving forward with IKMI to provide training to our BCKS personnel.  There is absolutely no risk to the Army or [CAI] from IKMI's training. . . .
>
> After reviewing various trademarks and IKMI's usage of them, it does not appear that IKMI infringes any validly procured trademark of KMPro or . . . Hudson.  Even if it turns out that there is a dispute over the procurement of a trademark, or the alleged infringement of a trademark, that would be a matter solely between IKMI and KMPro/Hudson; it certainly could not be resolved by third parties.

Id. at 3-4.[2] In its complaint, Triple-I alleges that it "proceeded to undergo training with IKMI during the week of April 10, 2006." First Amended Complaint (Doc. #65) filed January 16, 2007 ¶ 23.

Triple-I sues Hudson for fraudulent registration of the CKM mark under the Revised Kansas Trademark Act and seeks cancellation of the Kansas and Virginia CKM marks under the Lanham Act. Hudson seeks summary judgment on these claims. As to the fraudulent registration claim, Hudson argues that (1) Triple-I has not pleaded the fraud claim with particularity as required by Rule 9, Fed. R. Civ. P., (2) the registration for the CKM mark contained only true statements, and (3) the record contains no evidence of damages to Triple-I. As to Triple-I's request to cancel the Kansas and Virginia CKM marks, Hudson argues that the Lanham Act does not authorize the Court to cancel state marks.

## Analysis

### I.     Fraudulent Registration Under K.S.A. § 81-212

Triple-I claims that Hudson procured the registration of the CKM mark by knowingly making false and fraudulent representations. Triple-I asserts its claim under K.S.A. § 81-212, which imposes civil liability for fraudulent registration of trademarks and servicemarks as follows:

> Any person who for such person's own behalf, or on behalf of any other person, procures the filing or registration of any mark in the office of the secretary under the provisions of this act, by knowingly making any false or fraudulent representation or declaration, orally or in writing, or by any other fraudulent means, shall be liable to pay all damages sustained in consequence of such filing or registration, to be recovered by or on behalf of the party injured by such person's finding in any court of competent jurisdiction.

K.S.A. § 81-212. Although Kansas courts have not yet considered this statute, its express language

---

[2] Dysvick's response claims that CAI is "closely associated" with Hudson and KMPro, but does not explain this association. The record contains no evidence of any substantial connection between CAI and Hudson or KMPro.

clearly creates a cause of action for those injured by the fraudulent registration of a servicemark. Hudson argues that it is entitled to summary judgment on Triple-I's fraudulent registration claim because (1) Triple-I has not pleaded the fraud claim with particularity as required by Rule 9, Fed. R. Civ. P., (2) Hudson's registration of the CKM mark contained only true statements, and (3) the record contains no evidence of damages to Triple-I. Hudson's argument that Triple-I has no evidence of damages is dispositive, and the Court need not reach the remaining arguments.

To establish its fraudulent registration claim under Section 81-212, Triple-I must set forth evidence of damages which it sustained as a result of the fraudulent registration of the CKM mark.[3]

---

[3] As noted above, Kansas courts have not construed Section 81-212. In its evaluation of the Revised Kansas Trademark Act, including Section 81-212, the Court may examine the construction of the Lanham Act as persuasive authority. See K.S.A. § 81-220(b). Section 38 of the Lanham Act creates civil liability for the fraudulent registration of marks as follows:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

15 U.S.C. § 1120. This provision is not meaningfully different from K.S.A. § 81-212.

The elements of a fraudulent registration claim under Section 38 of the Lanham Act are (1) a false representation regarding a material fact; (2) knowledge or belief that the representation is false; (3) intent to induce action or refrain from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance. See United Phosphorous, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1226 (10th Cir. 2000) (citing San Juan Prods., Inc. v. San Juan Pools of Kan., Inc., 849 F.2d 468, 473 (10th Cir. 1988)). Federal courts have routinely dismissed fraudulent registration claims under Section 38 where plaintiff cannot show injury stemming from the alleged misrepresentation. See Benton Prod. Enters., Inc. v. Motion Media, 125 F.3d 855 (Table), 1997 WL 603412, at *3 (6th Cir. Sept. 30, 1997) (affirming district court dismissal of fraudulent registration claim because "the record does not substantiate [defendant's] injuries or show a causal link between the alleged injuries and the [allegedly fraudulent] statements"); Autozone, Inc. v. Strick, No. 03 C 8152, 2005 WL 2978708, at *4 (N.D. Ill. Nov. 3, 2005) (fraudulent registration claim dismissed on summary judgment because defendants could not show lost sales as consequence of allegedly false application); Aureflam Corp. v. Pho Hoa

(continued...)

Apparently, Triple-I's theory of damages is as follows: Hudson fraudulently registered the CKM mark; KMPro licensed the fraudulent mark, then claimed on its web site that IKMI and KM Mentor had infringed the fraudulent mark; CAI asked Triple-I not to use IKMI or KM Mentor to work on the BCKS subcontract because IKMI and KM Mentor had allegedly infringed the fraudulent mark; and as a result, Triple-I did not "receive[] engagements with the U.S. Army" which it would have received but for KMPro's infringement accusation. See Triple-I's Response (Doc. #182) at 32-39. The record evidence on this theory is legally insufficient to defeat Hudson's motion for summary judgment. First, the record contains no evidence that KMPro acted on behalf of Hudson when it made the statements on its web site, and the record reveals no other factual basis for imputing those statements to Hudson. Second, the statements on the KMPro website did not implicate the CKM mark with any specificity, and KMPro's allegation that IKMI and KM Mentor had engaged in ongoing trademark infringement does not address Triple-I's claim that Hudson fraudulently procured the CKM mark in the first instance. Finally, Triple-I presents no evidence of any factual link between Hudson's CKM mark – fraudulent or not – and the allegedly injurious statements by KMPro.

---

[3](...continued)
Phat I, Inc., No. C 05 00746 RS, 2005 WL 2253813, at *3 (N.D. Cal. Sept. 16, 2005) (fraudulent registration claim dismissed for failure to state a claim where defendant did not allege that allegedly fraudulent registration caused legally cognizable injury); Jackson v. Lynley Designs, Inc., 729 F. Supp. 498, 501 (E.D. La. 1990) (where defendant "offers no evidence of any damages sustained in consequence of the fraudulently secured trademark registration," no showing sufficient to establish element essential of case and summary judgment therefore appropriate); D. M. & Antique Import Corp. v. Royal Saxe Corp., 311 F. Supp. 1261, 1272-73 (S.D.N.Y. 1970) (without proof of damages, court cannot grant relief for fraudulent registration). Accepting these cases as persuasive authority, the Court finds that to establish its fraudulent registration claim under K.S.A. § 81-212, Triple-I must demonstrate damages as a result of Hudson's allegedly fraudulent registration of the CKM mark.

Further, the letter from Cherrie to Dysvick on March 27, 2006 indicates that because of the trademark infringement cloud over IKMI and KM Mentor, CAI did not want Triple-I to use them on the BCKS subcontract. The letter does not suggest that CAI wanted to cancel the subcontract or otherwise reduce Triple-I's involvement in knowledge management support for the BCKS. Triple-I alleges that the subcontract and Cherrie's letter, "when explained by Triple-I witnesses, as well as the expert Triple-I will use at trial, are adequate to support the damage claim." Triple-I's Response (Doc. #182) at 34. In opposing summary judgment, however, Triple-I may not rely on supposition as to what evidence will be presented at trial. See Lunow v. City of Oklahoma City, 61 Fed. Appx. 598, 602 (10th Cir. 2003) (citing Conaway, 853 F.2d at 794). In response to Hudson's motion for summary judgment, Triple-I has offered no affidavits or deposition testimony, and the record raises no genuine issue of material fact whether Triple-I has somehow suffered injury. Dysvick's response to Cherrie's letter states that Triple-I would continue to utilize IKMI to provide training to BCKS personnel, and Triple-I's complaint alleges that such training occurred in April of 2006. On this record, the Court cannot find a genuine issue of material fact whether Hudson's registration of the CKM mark upset Triple-I's subcontractual relationship with CAI or otherwise caused injury to Triple-I. Because damages are a necessary element of liability under K.S.A. § 81-212, Hudson is entitled to summary judgment on Triple-I's claim under that statute.[4]

---

[4] In Count I of the complaint, Triple-I does not seek relief under Kansas common law or any other provision of the Revised Kansas Trademark Act which might entitle it to relief without evidence of damages. Nor do the Triple-I briefs argue any additional theory of recovery. Because Triple-I specifically alleges K.S.A. § 81-212 as the basis of its fraudulent registration claim, the Court will not construct additional claims or remedies for Triple-I. See Moore v. Bd. of County Comm'rs of County of Leavenworth, 470 F. Supp.2d 1237, 1250 (D. Kan. 2007) (absent coherent discussion, court will not construct plaintiff's arguments or theories of recovery).

**II.     Cancellation Under The Lanham Act**

Triple-I seeks cancellation of the Kansas and Virginia CKM marks under Section 37 of the Lanham Act, 15 U.S.C. § 1119. Section 37 provides as follows:

> In any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action.

Triple-I claims that the CKM marks are descriptive or generic and that Hudson fraudulently obtained them.[5] Hudson argues that it is entitled to summary judgment because the Lanham Act does not authorize the Court to cancel state marks. By its express language, Section 37 applies to "registered marks," which the Lanham Act defines as marks registered in the United States Patent and Trademark Office. See 15 U.S.C. § 1127. Because the Kansas and Virginia CKM marks are not registered marks within the ambit of the Lanham Act, Section 37 does not authorize the Court to cancel those marks. Hudson is therefore entitled to summary judgment on Triple-I's request for cancellation of the Kansas and Virginia CKM marks under the Lanham Act.[6]

Triple-I argues that the Court should withhold ruling on the motion for summary judgment while it pursues additional depositions and awaits further document production. See Fed. R. Civ. P. 56(f). According to Triple-I, this evidence is "essential to obtain a full examination of whether

---

[5] As noted above, the specifics of Hudson's registration of the CKM mark in Virginia are not clear. As the basis for cancellation, Triple-I simply argues that the Virginia mark is "identical to the Kansas mark, and suffers from the same infirmities." Because the Lanham Act does not authorize the Court to cancel state marks, the Court need not distinguish between the Kansas and Virginia CKM marks.

[6] In Count II of the complaint, Triple-I asks the Court to cancel the Kansas CKM mark under K.S.A. § 81-210. Hudson does not seek summary judgment on this claim, and the Court's order has no bearing on this claim. Triple-I does not seek cancellation of the Virginia CKM mark under Virginia law.

false or fraudulent representations were made in [Hudson's] application." Triple-I's Response (Doc. #182) at 18. Because Triple-I does not suggest that additional evidence is necessary to determine damages or the application of the Lanham Act to state marks, the Court will not withhold ruling.

**IT IS THEREFORE ORDERED** that the Motion For Partial Summary Judgment On Behalf Hudson Regarding Alleged Fraudulent Kansas Servicemark Registration (Doc. #169) filed July 9, 2007 be and hereby is **SUSTAINED**. Counts I and VI of the Triple-I Corporation's First Amended Complaint (Doc. #65) are dismissed. All other claims remain.

Dated this 28th day of December, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge