## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| THE TRIPLE-I CORPORATION, | ) | **CONSOLIDATED CASES** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-2195-EFM |
| | ) | |
| HUDSON ASSOCIATES CONSULTING, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| KMMENTOR, LLC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 06-2381-EFM |
| | ) | |
| KNOWLEDGE MANAGEMENT PROFESSIONAL SOCIETY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| HUDSON ASSOCIATES, CONSULTING INC.,  et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 06-2461-EFM |
| | ) | |
| ERIC WEIDNER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the court on the following motions:

    1. Triple-I's Motion for Sanctions (Doc. 328);

    2. Knowledge Central's Motion to Amend Answer (Doc. 336);

    3. Triple-I's Motion for a Protective Order (Doc. 352);

    4. KMPro's Motion to Strike Report (Doc. 356);

    5. KMPro's Motion to Terminate Consolidation, Realign Parties and
       Establish Order of Trial (Doc. 367); and

    6. KMPro's Motion to Strike Unauthorized Pleadings (Doc. 378).

The following background provides context for the parties' motions.

### **Background**

The above listed cases were consolidated "for discovery and all future proceedings,

except trial." Order, Doc. 50, p. 2 filed Dec. 21, 2006.[1]  Highly summarized, the

consolidated cases involve claims and counterclaims related to "professional management

consulting" and "knowledge management" services.  Triple-I filed the first case (Case No.

06-2195) and alleges that Hudson Associates Consulting, Inc. ("Hudson")  and Knowledge

Management Professional Society ("KMPro") wrongfully interfered with Triple-I's

---

[1]

    The court deferred the issue of "trial"consolidation to an unspecified "later" date.
Id. at p. 3.

contractual relationship with Cubic Defense Applications, Inc. and the United States Army.[2] Triple-I also seeks cancellation of defendant Hudson's registration of the service marks "CKM Instructor" and "Certified Knowledge Leader" pursuant to 15 U.S.C. § 1119.

KMMentor and Douglas Weidner filed the second case (Case No. 06-2381) against KMPro, Hudson, Daniel Kirsch, John Leitch and Wayne Hulehan and allege copyright infringement, contributory copyright infringement, trademark infringement, cybersquatting, fraud, conversion, unfair competition, false advertising, breach of contract, unjust enrichment, misappropriation of trade secrets, conspiracy to injure trade, and defamation. KMPro and Hudson assert counterclaims against KMMentor and Douglas Weidner for trademark infringement, unfair competition, tortious interference, contributory trademark infringement, cybersquatting, breach of contract, Virginia computer crimes, civil conspiracy, conversion, and fraud.[3]   KMPRo and Hudson also seek a declaratory judgment that KMMentor and Weidner's unregistered trademark is invalid.

KMPro, Hudson, and Daniel Kirsch filed the third case (Case No. 06-2461) against Eric Weidner, Ronald Dysvick, Robert Spachman, Wendy Johnson Weidner, Brandon Weidner, the International Knowledge Manufacturing Institute and the Knowledge Central Corporation.[4]  The claims in the third case are against new parties but are similar to KMPro

[2]

This case was originally filed in the District Court of Johnson County, Kansas, and subsequently removed to federal court.

[3]

The second case was filed in the Eastern District of Virginia and transferred to this district.

[4]

The third case was filed in this district.

and Hudson's counterclaims against KMMentor and Douglas Weidner in the second case.[5]

### Triple-I's Motion for Sanctions (Doc. 328)

The Triple-I Corporation, Robert Spachman, Ronald Dysvick, and Knowledge Central Corporation (collectively "Triple-I") move for the imposition of sanctions against Hudson and KMPro (collectively "KMPro") for failing to comply with the Court's September 18, 2008 Order (Doc. 302).[6] Specifically, Triple-I requests the following sanctions:

> 1. an order establishing that KMPro has no documents responsive to Production Request Nos. 38 and 44 of Triple-I's second set of production requests; and
>
> 2. an award of Triple-I's reasonable attorney fees and costs for failure to comply with the discovery order.

KMPro argues that sanctions are not appropriate and that they should be awarded attorney fees. The series of events leading up to this motion and the parties' arguments are discussed in greater detail below.

Triple-I's motion springs from its difficulty in securing appropriate discovery

---

[5]

The number of parties, various claims and counterclaims, and partial consolidation make organization of the parties difficult. Based on entry of appearances by counsel, the parties can be divided into three groups. Mick W. Lerner represents (1) Triple-I Corporation, (2) Ronald Dysvick, (3) Robert Spachman, and (4) Knowledge Central Corporation. Jonathan Frieden and Thomas Hamill represent (1) KMMentor, (2) Douglas Weidner, (3) Eric Weidner, (4) Wendy J. Weidner, (5) Brandon Weidner and (6) the International Knowledge Management Institute. Rhonda Smiley represents (1) Hudson, (2) KMPro, (3) Daniel Kirsch, (4) John Leitch, and (5) Wayne Hulehan. Highly summarized, Mr. Lerner and Mr. Frieden's clients oppose Ms. Smiley's clients.

[6]

For editorial clarity, "Triple-I" and "KMPro" will be referred to in the singular.

responses to its second set of production requests.  KMPro's initial responses to various production requests included the following statements:  "these documents have been produced . . . , appropriate documents have already been produced . . . , (or) to the extent such documents exist and have not already been provided, they will be produced."  However, because KMPro failed to provide any index or reference to Bates-stamped numbers for specific production requests, Triple-I could not determine which documents, if any, had been produced in response to individual production requests.  Triple-I moved to compel, arguing that KMPro's attempt to shift the burden to plaintiff to determine which "already produced" documents matched which production request was improper.  The court held that KMPro's responses were "inadequate" and directed KMPro to "specifically identify by Bates-stamp number" the documents responsive to the production requests.  Order, Doc. 302.  The court also directed KMPro to produce documents responsive to a list of Production Requests (including Requests 38 and 44) by September 26, 2008.  Id.[7]

On September 25, 2008, KMPro served a supplemental response listing by Bates-stamped number the documents responsive to specific production requests.  However, the supplemental response contained no mention of Production Request Nos. 38 and 44.  In a "golden rule" letter dated October 24, Triple-I asked whether KMPro had any documents responsive to Requests 38 and 44 and, if not, to simply say so in a supplemental response.  KMPro served a third supplemental response on October 27, 2008 to Production Request

---

[7]

Magistrate Judge O'Hara issued the September 18 ruling and addressed a number of production requests and issues.  A conflict subsequently developed for Judge O'Hara and, following his recusal, the pretrial matters were transferred to the undersigned judge.

Nos. 38 and 44, stating "there are no **_additional_** known documents responsive to this request." (Emphasis added).

Triple-I immediately sent an e-mail message to KMPro's counsel pointing out that the qualification of "no additional" documents indicated that responsive documents had previously been produced and the failure to identify the documents by Bates-stamped number violated the Court's September 18 Order. KMPro responded by serving the following fourth supplemental response to Production Request Nos. 38 and 44 on October 28, 2008:

> **[Production Request] 38.** Each and every document related in any way to the Certified Knowledge Manager (CKM) workshop conducted by Hudson in Virginia Beach, Virginia during the month of August 2002.
>
> **RESPONSE:** There are no additional known documents responsive to this request.
> As stated in KMPro Parties' 1st Supplemental Responses to the Triple-I Parties' Second Request for Production of Documents, served July 29, 2008: See **Morris000001-Morris000078; Hudson Disk 1, Folders 2, 3; Hudson Disk 2, Folders 11,12.** (Emphasis in original.)
>
>
> **[Production Request] 44.** Each and every document related in any way to the transfer of ownership of any trademark or service mark from Ed Swanstrom to Agility Corporation or to eKnowledge Center or to Ken Swanstrom.
>
> **RESPONSE:** There are no additional known documents responsive to this request.
> As stated in the KMPro Parties' 1st Supplemental Responses to the Triple-I Parties' Second Request for Production of Documents, served July 29, 2008: See **Hudson-003034 through Hudson-003039; Hudson-02978 through Hudson-02979, H-01658 through H-1720: Hudson-03028 through Hudson-03033; Hudson -00848 through Hudson-00857; Hudson-00859 through Hudson-00861; Hudson-00863 through Hudson-00864; Hudson-90866 through Hudson-00867; and Hudson Disk 1, Folder 5, KMCB.** (Emphasis in

original.)

Triple-I moves for sanctions, arguing (1) KMPro failed to comply with the September 18, 2008 Order, (2) that many of the referenced Bates-stamped pages have absolutely no relation to the materials requested, and (3) some of the information provided on disks is corrupted and/or unreadable.  In response to the motion for sanctions, KMPro argues:

> The Triple-I Parties simply seek something in response to Request No. 38 **that does not exist and that repeatedly has been declared not to be known to exist.**  They now seek a pound of flesh to go with that answer that has been repeatedly conveyed to them through such allegedly "ambiguous" responses as "there are no additional known documents responsive to this request." Doc. 329-4, 329-6.

KMPro's Response, Doc. 339, p. 1, (Emphasis added).  KMPro also argues that Triple-I "fails to understand the issues and materials before them [and this] is not a problem this Court can solve with any order on this motion."  Finally, with respect to the issue of electronic documents not being accessible, KMPro argues  that this is the first time the issue has been raised and Triple-I made no prior efforts to discuss distorted electronic records.

Addressing the parties' arguments in reverse order, the court declines to award sanctions concerning electronic data which Triple-I says that it cannot read.  There is no indication that this issue was discussed before the filing of the motion and no evidence as to who, if anyone, is at fault.[8]  Under the circumstances, the court declines to award sanctions for illegible electronic records.  However, Triple-I is entitled to review the information and the parties shall confer in good faith to make the information available to Triple-I in a

---

[8]

The problem could be as simple as a bad disk or, as KMPro suggests, the result of different computer setups (Macintosh) which Triple-I failed to consider.

readable format.  If a "readable" electronic version is not possible, KMPro shall print the materials and provide Triple-I with a copy.  Each page of the printed copy shall be Bates-stamped.

The court also declines to award sanctions based on Triple-I's argument that the documents are unresponsive to the production requests.  All that is before the court is Triple-I's assertion that the documents are not responsive and KMPro's assertion that it has produced documents responsive to the requests.  Triple-I, the party seeking sanctions, has the burden of supporting its motion and the record provided is simply inadequate for the court to determine whether the referenced documents are unresponsive.

Sanctions are warranted, however, for KMPro's failure to comply with Judge O'Hara's September 18, 2008 Order.  Despite being ordered to produce documents responsive to Production Request Nos. 38 and 44 by September 26, 2008, KMPro failed to even mention the two requests in their September 25 "supplemental" production.  The failure to comply with the Order caused Triple-I to expend unnecessary time and effort to obtain discovery responses *previously ordered by the court.*

Moreover, KMPro has provided evasive and incomplete responses to Triple-I's subsequent requests for clarification.  The conclusory statement that there were "no *additional* documents" in the third supplemental response (served October 27, 2008) is

similar to KMPro responses that Judge O'Hara rejected in his September 18, 2008 Order.[9] The court is unable to determine whether documents responsive to Production Request 38 exist and have been produced.[10]

Under the circumstances, monetary sanctions are warranted for (1) KMPro's failure to comply with the Judge O'Hara's September 18, 2008 Order and (2) subsequent evasive and inappropriate responses. The court rejects Triple-I's request for an order declaring that no documents responsive to Production Request Nos. 38 and 44 exist. However, the court will require a final and unequivocal supplemental response from KMPro setting out by Bates-stamped number the documents responsive to Requests 38 and 44.

**IT IS THEREFORE ORDERED** that Triple-I's motion for sanctions **(Doc. 328)** is **GRANTED.** Counsel for Triple-I shall file and serve a statement of his normal hourly rate, hours expended, and expenses on this dispute after September 25, 2008 by **May 11, 2009.**

---

[9]

As noted above, Judge O'Hara rejected one-line responses such as "appropriate documents have already been produced" or "to the extent such documents exist and have not already been provided, they will be produced." The reason for rejecting such responses is obvious: opposing counsel cannot determine which, if any, documents are responsive to the discovery request. The old game of dumping a large volume of documents on opposing counsel without reference to specific production requests is no longer played in federal court. Under Fed. R. Civ. P. 34(b)(2)(E), a party responding to a production request has two options: (1) produce the documents as they are kept in the usual course of business, or (2) organize and label the documents to correspond to the categories in the request.

[10]

Compare KMPro's fourth supplemental response (listing Bates-stamped documents) with KMPro's response to the motion for sanctions (arguing Triple-I seeks something declared "not to be known to exist.")

Because the improper and evasive responses are the result of KMPro counsel's tactical decisions, the sanctions are awarded against Rhonda Smiley personally.  Ms. Smiley is granted ten calendar days to respond to Triple-I's statement of fees and expenses.  The response shall be limited to the reasonableness of the amount of requested fees and expenses. The court will not entertain or countenance supplemental argument on whether sanctions are warranted.

**IT IS FURTHER ORDERED** that KMPro shall serve Triple-I with a final and unequivocal supplemental response setting out by Bates-stamp number the documents responsive to Requests 38 and 44 on or before **May 11, 2009.**

### Knowledge Central and Ron Dysvick's
### Motion to Amend Their Answers (Doc. 336)

Knowledge Central and Ron Dysvick move for leave to amend their respective answers to add the affirmative defenses of truth and privilege in response to Dan Kirsch's claim of defamation.  Dan Kirsch, Hudson, and KMPro (again, collectively "KMPro") oppose the motion, arguing that Knowledge Central and Dysvick fail to show good cause for modifying the scheduling order under Fed. R. Civ. P. 16(b)(4) and the proffered amendments do not meet the requirements of Fed. R. Civ. P. 15(a).  For the reasons set forth below, the motion shall be GRANTED.

With respect to the Scheduling Order and Rule 16(b)(4), KMPro's arguments are virtually unintelligible.  Although KMPro cites case law for the standards for amending the scheduling order, it fails to cite any relevant date or language from the applicable scheduling

order precluding Knowledge Central and Dysvick from moving to amend their answer.[11]

Accordingly, the court rejects KMPro's Rule 16(b)(4) argument.

The standard for permitting a party to amend its complaint is well established. Without an opposing party's consent, a party may amend its pleading only by leave of the court. Fed. R. Civ. P. 15(a).[12]   Although such leave to amend "shall be freely given when justice so requires," whether to grant leave is within the court's discretion. Panis v. Mission Hills Bank, 60 F.3d 1486, 1494 (10th Cir. 1995)(citing Woolsey v. Marion Labs., Inc., 934 F. 2d 1452, 1462 (10th Cir. 1991)).  In exercising its discretion, the court must be "mindful of the spirit of the federal rules of civil procedure to encourage decisions on the merits rather than on mere technicalities." Koch v. Koch Industries, 127 F.R.D. 206, 209 (D. Kan. 1989). The court considers a number of factors in deciding whether to allow an amendment, including untimeliness, prejudice to the other party, bad faith, and futility of amendment. Hom v. Squire, 81 F.3d 969, 973 (10th Cir. 1996).

KMPro contends that Knowledge Central and Dysvick's motion should be denied because they "unduly delayed assertion of these defenses." Specifically, KMPro argues that

---

[11]

At most, KMPro cites the July 3, 2008 deadline for the completion of discovery. While the deadline for the completion of discovery is relevant to the court's analysis of timeliness and prejudice, it does not establish a deadline for motions to amend and trigger a "good cause" analysis under Rule 16(b)(4).

Equally important, the docket in this case reflects a tortured procedural history. Because of the extensive history of earlier proceedings, the parties must cite to dates, orders, and prior rulings with precision.

[12]

A party may amend its pleading once as a matter of course before a responsive pleading is filed.  The time for amending "as a matter of course" is long past.

Knowledge Central and Dysvick had knowledge of these defenses for some time but did not seek leave to amend their answers until the parties were preparing the pretrial order. However, as explained below, the court is not persuaded that the motion to amend should be denied based on an "untimely" argument.

In December 2007 KMPro moved to amend its complaint to add: (1) Knowledge Central as a defendant, (2) a defamation claim against Knowledge Central and Dysvick, and (3) Dan Kirsch as a plaintiff with respect to the defamation claim (Doc. 206). Knowledge Central and Dysvick opposed the proposed amendment, in part, based on truth and privilege. (Doc. 209). Judge O'Hara rejected the futility argument and allowed the amendment, noting that the "myriad of issues raised by the responding party as to the futility of the defamation claim are issues which would be more appropriately resolved by Judge Vratil in the context of a motion for summary judgment or by way of a motion to dismiss." Order, Doc. 226, filed February 5, 2008. The second amended complaint was filed on February 8, 2008 and Dysvick filed his answer on February 22, 2008. Knowledge Central filed its answer on March 7, 2008. For reasons unexplained, neither Dysvick nor Knowledge Central formally asserted truth or privilege as affirmative defenses in their respective answers. Notwithstanding this oversight, the issues of truth and privilege had clearly been raised and argued by Dysvick and Knowledge Central as defenses to the defamation claims. Under this unusual sequence of events, the court is not persuaded that the motion by Dysvick and Knowledge Central's should be denied based on "untimeliness."

KMPro also argues that the parties are acting in bad faith because Knowledge Central and Dysvick deny making the statements in their answer yet still seek to assert truth and

privilege.  The court is not persuaded that such pleadings rise to the level of "bad faith."  As KMPro concedes, Fed. R. Civ. P. 8(e) allows a party to "state as many separate claims or defenses as it has, regardless of consistency."

KMPro raises two arguments concerning prejudice.  First, in a conclusory assertion, KMPro argues that ***Knowledge Central and Dysvick*** would not be unduly prejudiced if the motion were denied.  The rationale for this argument is not entirely clear since Knowledge Central and Dysvick would certainly be prejudiced if denied the right to assert valid defenses.  The argument that the ***moving parties*** would not be unduly prejudiced is not persuasive.

KMPro also argues that it would suffer undue prejudice because it was not permitted to question Dysvick about these two defenses during his deposition.  Additionally, Dysvick's wife is a possible witness as to the "truth" of the allegations and KMPro is precluded from taking her deposition because discovery is closed.  KMPro also argues that some other witnesses' memories may have faded and security camera images are likely lost.

The court is not persuaded that KMPro is unduly prejudiced by the amendment.  With respect to security cameras, Dysvick testified during his deposition that no security cameras were installed at his store when the encounter giving rise to the defamation claim occurred.  Equally important, Kirsch himself testified that Dysvick was alone in the store when he entered; thus, there are no "other" employees to depose.  However, to foreclose any claims of prejudice, the court will allow KMPro to reopen Dysvick's deposition and to also take Dysvick's wife's deposition.  The questions shall be limited to the defense of truth and/or privilege.  Because of the narrow scope of the additional discovery, both depositions shall

be limited to one hour and completed on or before **May 18, 2009.**

**IT IS THEREFORE ORDERED** that Knowledge Central and Dysvick's motion to amend their respective answers **(Doc 336)** is **GRANTED.**  The amended answers shall be electronically filed on or before **May 11, 2009.**

### Triple-I's Motion for a Protective Order (Doc. 352)

The genesis of this motion is an e-mail mistake by Triple-I's counsel.  On September 18, 2008 the court ordered the parties to participate in mediation before Sandra Sellers of McLean, Virginia.  Doc. 301.  Ms. Sellers required all parties to execute an Agreement to Mediate (the "Agreement") containing a confidentiality clause that, among other conditions, cites D. Kan. Rule 16.3(i) and (j).  The parties participated in mediation with Ms. Sellers on December 2 and 3, 2008 but no resolution was reached.

As a housekeeping matter Ms. Sellers asked that the parties sign one conformed version of the Agreement to replace the several identical copies executed by the parties.[13] On December 4, counsel for Triple-I (Mick Lerner) sent an e-mail to KMPro's counsel (Rhonda Smiley) with what he thought was the Agreement.  Unfortunately, instead of attaching the Agreement, Mr. Lerner sent his "confidential mediation statement" to opposing

---

[13]   Apparently, counsel for the KMPro parties requested and was granted a modification by Ms. Sellers to the standard Agreement.  The confidentiality provisions of the Agreement are not affected by the modification.

counsel.[14]   Because the e-mail message described the attachment as the Mediation Agreement, Ms. Smiley forwarded the e-mail to her clients without opening the attachment.

Ms. Smiley subsequently reviewed the attachment and called the document to Mr. Lerner's attention in a December 10 e-mail message.  Mr. Lerner responded by e-mail and suggested that ***Ms. Smiley*** had acted inappropriately and demanded (1) the return of the document and all copies, (2) deletion of the message  from all of Ms. Smiley's computers, (3) a "requirement" that the content not be revealed to Ms. Smiley's clients and (4) certain written confirmations and agreements from Ms. Smiley.  Ms. Smiley corrected Mr. Lerner's factual assertions and the two attorneys exchanged a series of unproductive e-mail messages. Mr. Lerner filed the present motion after the parties were unable to reach an agreement concerning the handling of Triple-I's confidential mediation statement.

Triple-I moves for a protective order, arguing that both the Agreement and D. Kan. Rule 16.3 contain confidentiality clauses which justify entry of a protective order.  The court agrees.   The Agreement executed by the parties provides, with relevant qualifications discussed in greater detail below, that "all information, reports, data and/or documents prepared by or on behalf the parties, and/or presented to the mediator, are deemed confidential and shall not be disclosed."  Similarly, D. Kan. Rule 16.3(i) provides that the contents of "written mediation statements" shall be treated as confidential information and

---

[14]

The mediation statement was prepared for Ms. Sellers' confidential review and contains, among other items, Triple-I's (1) factual version of the evidence, (2) analysis of the claims and defenses, (3) strengths and weaknesses, and (4) recommendations for resolving the cases.

its disclosure restricted.[15]

KMPro voluntarily offers "not to use the mediation statement itself in trial or in any papers filed with the court." However, KMPro argues that there is no practical way it can agree to not use *facts* in the mediation statement because *the facts were already known* and are essential to proving or defending issues in this case. Triple-I counters that the mediation statement contains more than *facts already known to KMPro* such as Triple-I's analysis of its probability of success at trial.

Both sides take an unnecessarily narrow view of the mediation statement and the proposed protective order. However, there is no valid reason that KMPro should be precluded from using facts *already known to it* just because the facts are listed in the mediation statement. In fact, Ms. Sellers' Mediation Agreement specifically addresses this issue and provides:

> [E]vidence that: (i) is rightfully known and lawfully obtained by a party without an obligation to maintain its confidentiality prior to receipt [or] (ii) the party previously obtained in good faith from a third party having the right to disclose without restriction on disclosure and without breach of a non-disclosure obligation, *shall not be rendered confidential, inadmissible, or not discoverable solely as a result of its use in the mediation.* (Emphasis added).

The court will incorporate similar language in the protective order to insure that KMPro is

---

[15] KMPro's argument that the confidentiality provisions of the Mediation Agreement and D. Kan. Rule 16.3 are not applicable because the mediation statement was sent *after* the December 2 and 3 mediation session is without merit. The Mediation Agreement and Rule 16.3 do not limit confidentiality to the conclusion of the mediation session. Indeed, it is not unusual for settlement discussions to continue or be revisited in the days and weeks after the formal mediation date.

not precluded from utilizing facts *already known* simply because Triple-I listed the facts in its mediation statement.   With this caveat, the motion for a protective order shall be GRANTED.

**IT IS THEREFORE ORDERED** that Triple-I's motion for a protective order **(Doc. 352)** is **GRANTED.**   Counsel for Triple-I shall prepare a protective order under separate order containing the following provisions for the court's approval:

1. The parties and counsel who mistakenly received Triple-I's mediation statement shall immediately destroy and delete the materials from their respective computer systems and also destroy any other copies, regardless of the format or manner of storage.

2. None of the parties in this lawsuit and/or their counsel may use the document titled "Confidential Mediation Statement" in this litigation or elsewhere.

3. The parties and their counsel shall not disclose the content of the Confidential Mediation Statement to any person except as set forth in the Agreement to Mediate and D. Kan. Rule 16.3(i) and (j).  Evidence:  (a) that is rightfully known and lawfully obtained by a party without an obligation to maintain its confidentiality prior to receipt, or (b) which the party previously obtained in good faith from a third party having the right to disclose without restriction on disclosure and without breach of a non-disclosure obligation *shall not be rendered confidential, inadmissible, or not discoverable solely as a result of its use in the mediation.*

4. The KMPro parties and counsel shall not reference in this litigation or otherwise disclose the following sections of the Confidential Mediation Statement:

- Triple-I's probability of success at trial on each issue;
- Most compelling evidence against Triple-I;
- Most compelling evidence by Triple-I;
- Damage claims against Triple-I;
- Projected hours, fees and expenses for each side at trial;
- Timing of trial and appeal;
- Why the litigation has not been settled; and

-17-

> •     Suggestions for breaking the settlement impasse.

A copy of the protective order shall be served on every party by their counsel.  If a party or counsel has disclosed the contents of the mediation statement to a non-party, counsel shall also serve the non-party with a copy of the protective order.

### KMPro's Motion to Strike Report (Doc. 356)

On September 18, 2008 the parties were ordered to "meet and confer in good faith . . . about developing a detailed plan" for moving the cases forward in the event mediation was unsuccessful.  Counsel conferred on December 8, 2008 and Rhonda Smiley advised opposing counsel that she was required to consult with her clients regarding deadlines and strategies and "was not agreeing to anything."  For reasons largely unexplained, the report was filed without Smiley's approval or agreement and KMPro moves to strike the report.

The report has been "withdrawn" and the clerk of the court has sealed the document from public viewing.  Accordingly, the motion to strike is MOOT.

**IT IS THEREFORE ORDERED** that KMPro's motion to strike report **(Doc. 356)** is **MOOT.**

**KMPro's Motion to Terminate Consolidation, Realign Parties and Establish Order of Trial (Doc. 367)**

As noted above, the three cases were consolidated for pretrial purposes. KMPro moves to terminate the consolidation, realign the parties and establish an order of trial. However, the court is not persuaded that the "consolidation" should be terminated at this time. Accordingly, KMPro's motion shall be DENIED WITHOUT PREJUDICE.

**IT IS THEREFORE ORDERED** that KMPro's motion to consolidate, realign parties and establish an order of trial **(Doc. 367)** is **DENIED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that all dispositive motions shall be filed on or before **June 19, 2009.** A jointly prepared final pretrial order shall be submitted 30 days after the rulings on the parties' dispositive motions.

**KMPro's Motion to Strike Unauthorized Pleadings (Doc. 378)**

KMPro filed a second amended complaint on **February 8, 2008** (Doc. 227, lead case 06-2195-EFM). Ronald Dysvick and Robert Spachman, filed their respective answers on **February 22, 2008** (Doc. 232 and 233, lead case 06-2195-EFM) and Knowledge Central filed its answer on **March 7, 2008** (Doc. 237, filed March 7, 2008). For reasons that are unclear, on **March 13, 2009** a court docketing clerk made an entry in consolidated case 06-2461 showing that KMPro filed an amended complaint in the lead case 06-2195. On **March 24, 2009**, Dysvick, Spachman, and Knowledge Central filed amended answers in case 06-2461 adding new affirmative defenses (Doc. 52, 53, and 54, case 06-2461).

KMPro moves to strike Doc. 52, 53, and 54, arguing that the March 24, 2009 amended answers with new affirmative defenses are "unauthorized pleadings." The court agrees. As noted above, KMPro filed its amended complaint on February 8, 2008 and Dysvick, Spachman, and Knowledge Central timely filed their answers in 2008. The fact that a docket clerk made a clerical entry in 2009 to one of the consolidated cases does not authorize Dysvick, Spachman, and Knowledge Central to file amended answers with new affirmative defenses.[16] Accordingly, KMPro's motion to strike Doc. 52, 53, and 54 in consolidated case 06-2461 shall be GRANTED.[17]

**IT IS THEREFORE ORDERED** that KMPro's motion to strike Doc. 52, 53, and 54, in case 06-2461 **(Doc. 378)** is **GRANTED.**

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence

---

[16]  The practical impact of this ruling for Dysvick and Knowledge Central is unclear since the court has now granted their motion to amend their respective answers to assert the affirmative defenses of truth and privilege. However, no motion to amend was filed concerning Mr. Spachman's March 24, 2009 answer and the court declines to entertain such a motion at this late date.

[17]  For the sake of consistency the docket clerk should have also entered Dysvick, Spachman, and Knowledge Central's *2008 answers* to consolidated case 06-2461 on March 13, 2009 when entering KMPro's February 2008 amended complaint.

that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 1st day of May 2009.


S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge